301 So.2d 551

JEFFERSON COUNTY, Alabama, BOARD OF HEALTH and Dr. George Hardy, as Health Officer of Jefferson County

v.

CITY OF BESSEMER, a municipal corp., etc.

SC 768.

Supreme Court of Alabama.

Oct. 3, 1974.

238

J. Howard McEniry, Jr., Bessemer, for City of Bessemer.

James H. Weaver, Jr., Birmingham, for City of Hueytown.

David H. Hood, Jr., Bessemer, for City of Roosevelt City.

Thomas R. Elliott, Jr., Birmingham, for City of Midfield.

Charles L. Kerr, Leeds, for City of Leeds.

J. Clewis Trucks, Fairfield, for City of Fairfield.

Powell Lipscomb, Bessemer, for City of Brownsville.

J. Thomas King, Birmingham, for City of Adamsville.

---

Sadler, Sadler, Sullivan & Sharp, Birmingham, Stone, Patton & Kierce, Bessemer, William A. Thompson, Birmingham, for appellants.

Robert E. Paden, Bessemer, for City of Lipscomb.

Thomas N. Crawford Jr., Birmingham, for City of Pleasant Grove.

James M. Tingle, Birmingham, for Cities of Gardendale and Tarrant City.

Robert S. Vance, Birmingham, for City of Vestavia Hills.

JONES, Justice.

This appeal is from a final decree of the Circuit Court of Jefferson County, Bessemer Division, declaring Act No. 546, Acts of Alabama 1973, unconstitutional. The Bill for Declaratory Judgment was filed by five Jefferson County municipalities (later joined by the intervention of twenty-two others) against the Jefferson County Board of Health, Dr. George Hardy, as Health Officer of Jefferson County, and J. D. Smith, as Tax Collector of Jefferson (whose answer was by way of interpleader).

This case is to be decided upon a determination of three basic issues which may be simply stated as follows:

Did Act No. 546:

1. Constitute a local law so as to be void for want of a publication as required under § 106 of the 1901 Constitution of Alabama?

2. Provide for an unconstitutional diversion or appropriation of tax funds, inasmuch as (a) the classifications therein fixed for such diversion or appropriation are arbitrary, or a subterfuge to shield one class and unduly burden another, or to oppress unlawfully in its administration?

 (b) such tax funds as are to be diverted or appropriated have all been collected from taxes levied solely upon the citizens of certain localities and therein directed to be expended for the benefit of citizens of another locality?

3. Embrace a material subject in § 5 which was not described in its title, which rendered the same void under § 45 of the 1901 Constitution of Alabama?

Under our rules of review, if the lower Court's declaration of unconstitutionality of Act No. 546 on any one or more of the foregoing grounds is supported by competent evidence and is in accordance with applicable legal principles, this cause is due to be affirmed; otherwise, it is due to be reversed. Since we find, after a careful review thereof, that the lower Court's holding as to ground No. 1—local versus general act—is correct, we confine our consideration to the issue of the double classification aspect of the Act and affirm.

While the record before us is voluminous, we feel that a summary of the defendants' responses to plaintiffs' request for admission of facts will suffice to set the factual context in which this controversy arose.

1. Act No. 546 was not published as if it were a local act;

2. The census figures for each city as shown in Appendix A of the Tax Collector's interpleader are correct (11 municipalities have a population of more than 5,000 and 16 have less);

3. Seven municipalities have not exercised their right to levy ad valorem taxes;

4. The same type of public health services is furnished by the defendants to residents of municipalities as to residents of the county;

5. The defendants have not kept records showing a comparison or a segregation of the cost of services to residents of incorporated and unincorporated areas;

6. The classification by population of more than 500,000 applies only to Jefferson County, Alabama.

Act No. 546 reads:

"Be It Enacted by the Legislature of Alabama:

"Section 1. This Act shall apply to every county of the State of Alabama having a population of more than 500,000 according to the last or any subsequent federal census, and to no other county.

"Section 2. [Herein is contained a definition of the terms 'Board Treasurer', 'County', 'County Board of Health', and 'Tax Collector'.]

"Section 3. In order further to provide for the financing of county boards of health in counties in the State of Alabama having populations in excess of 500,000, and subject to the provision of Section 4 hereof, there is hereby appropriated, allocated and otherwise ordered and directed to be set aside and paid over annually to the County Board of Health out of the ad valorem taxes collected by the Tax Collector for the several municipalities located wholly or partially in the County, the following:

(a) For each municipality having a population of more than 5,000 according to the last federal census, an amount equal to $3.00 times the population of each said municipality according to the last federal census; and

(b) For each municipality having a population of 5,000 or less an amount equal to $1.50 times the population of each said municipality according to the last federal census.

"In the case of any municipality located partially within and partially without the boundaries of the County, the amounts provided herein to be paid over to the County Board of Health shall be calculated on the basis of the number of persons who are residents of that portion of the municipality that is within the boundaries of the County.

"Section 4. The amounts required by the provisions of Section 3 hereof to be paid to the County Board of Health shall be paid to the Board Treasurer annually and not more than thirty days after December 31 of each year by the County Tax Collector out of ad valorem tax receipts collected by the County Tax Collector for the respective municipalities in the County; provided however, that the County Tax Collector shall not pay over to the County Board of Health any ad valorem tax receipts the payment of which to the County Board of Health would impair the obligation of contracts entered into by any municipality prior to July 15, 1973, or any ad valorem tax receipts from levies made for a specific purpose as authorized by the provisions of any section of the Constitution of Alabama 1901 or any amendment thereto.

"Section 5. If the Tax Collector does not have any ad valorem taxes due any municipality or the ad valorem taxes due any municipality is insufficient to pay

the amounts due under the formula set out in Section 3, then the balance due under the said formula shall be a priority claim (subject, however, to any claims having priority under or pursuant to any provision of the Alabama or United States Constitution), against any and all other funds of any such municipality and shall be paid by such municipality directly to the Board Treasurer.

"Section 6. [Severability clause.]

"Section 7. [Repealer clause.]

"Section 8. This Act shall become effective upon its approval by the Governor or upon its otherwise becoming a law.

, "Approved August 27, 1973.

"Time: 5:15 P.M."

## PRESUMPTIONS FAVORING VALIDITY

 As a preface to our consideration of the constitutional issues, we point out that this Court is fully cognizant of, and in complete agreement with, the numerous longstanding and well-reasoned opinions dealing with the importance of upholding legislative acts as constitutional whenever possible. These propositions may be summarized as follows:

(1) A Statute is presumed to be valid and the party challenging its constitutionality has the burden of establishing such invalidity. Mobile Housing Board v. Cross et al., 285 Ala. 94, 229 So.2d 485 (1969); Rogers et al. v. City of Mobile et al., 277 Ala. 261, 169 So.2d 282 (1964); Alabama State Federation of Labor et al. v. McAdory et al., 246 Ala. 1, 18 So.2d 810 (1944), County Board of Education of Jefferson County v. State ex rel. Carmichael, 237 Ala. 434, 187 So. 414 (1939).

(2) A court should not strike down a statute as unconstitutional unless it is convinced beyond a reasonable doubt that such statute is unconstitutional. Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667 (1968); State v. Mills, 278 Ala. 188, 176 So. 2d 884 (1965); Al Means, Inc., et al. v. City of Montgomery et al., 268 Ala. 31, 104 So.2d 816 (1958); Taylor v. Johnson, 265 Ala. 541, 93 So. 2d 143 (1957); James et al. v. Todd, 267 Ala. 495, 103 So.2d 19 (1957); Riley et al. v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948); State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939).

 These presumptions favoring validity, being fully indulged, must nonetheless give way where the legislative flaws make it judicially impossible for the act to conform to the requirements of our most revered polestar: constitutionality. See Jefferson County v. Busby, 226 Ala. 293, 148 So. 411 (1933); Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416 (1932); Henry, County Treasurer v. Wilson, 224 Ala. 261, 139 So. 259 (1931).

## LOCAL V. GENERAL ACT

The first issue with which we are confronted is whether the Act before us can be categorized as one of general or local application, as defined in § 110, Article 4, Constitution of Alabama 1901.

"A general law within the meaning of this article is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association, or corporation."

 On an initial reading, the distinction between these two types of legislation seems quite lucid. As we shall presently see, however, any presupposed degree of clarity becomes only superficial in the light of our case law, which is perplexing at times in its ratio decidendi. Nevertheless,

this distinction is a critical one since a local law can only become valid through compliance with § 106 of the State Constitution, which prescribes that notice of such law must be published in the county affected by its passage.

Otherwise stated, should it be determined that the Act before us is in actuality a local law passed under the guise of a general law, and thus would require publication to initially ensure its contitutionality, then the entire Act must be struck down as unconstitutional since here there was no publication.

Appellants, in support of the Act's constitutionality, maintain that Act No. 546 purports to be, and is, what has come to be known as a general act of local application. With this contention we cannot agree.

By § 1 of the Act, it is made applicable only in counties having a population of more than 500,000. § 3 contains additional classifications which render its impact different with respect to municipalities having a population of more than 5,000 as compared to municipalities having a population of 5,000 or less.

The record amply demonstrates that Act No. 546 was a measure intended to meet the specific needs of the Jefferson County Board of Health. Like most comparable legislation, it wound its way through the legislative process as a local act, being presented to the Jefferson County legislative delegation as a matter of its local concern. As such, it would appear to run afoul of both the letter and the spirit of the standard established by this Court in State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679 (1904): ". . . a law which is general in its terms, and is in good faith so framed that all parts of the state may come within the circle of its operation, is a general law." Yet its contravention of the subsequent and now widely accepted test established in Reynolds v. Collier, 204 Ala. 38, 39, 85 So. 465, 467

(1920), is not nearly so clear, that test being:

". . . The effect of all of our decisions, in short, has been that where there is a *substantial difference in population,* and the classification is *made in good faith, reasonably related to the purpose to be effected* and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld." [Our emphasis.]

There, and in subsequent cases, this Court recognized a larger field of operation for the so-called "general act of local application" in heavily populated urban areas. The trend has been to accept the open-ended population classification applicable to Jefferson County only. Even here, however, our holdings do not present an altogether clear standard for determining whether a logical relationship exists between the classification employed and the purposes of the act. On this point, the line of demarcation between our recent decisions in Masters et al. v. Pruce et al., 290 Ala. 56, 274 So.2d 33 (1973), on the one hand, and Duncan v. Meeks, 281 Ala. 452, 204 So.2d 483 (1967), or McDowell et al. v. Columbia Pictures Corporation et al., 281 Ala. 438, 203 So.2d 454 (1967), on the other, is neither black nor white, but essentially gray. Our decisions, therefore, require a case by case determination.

■ As we have previously indicated, such determination is here pretermitted, however, because of our treatment of the

aspect of double classification of Act 546. When an act contains a scheme of double classification which eliminates its prospective application or which destroys the reasonable relationship with its subject matter, it cannot be considered as a general act. Opinion of the Justices, 277 Ala. 630, 173 So.2d 793 (1965). See also, Opinion of the Justices, 275 Ala. 465, 156 So.2d 151 (1963).

The case of State ex rel. Saltsman v. Weakley, et al., 153 Ala. 648, 45 So. 175 (1907) furnishes an excellent explanation of double classification, and its authority is compelling here both because of its clear analysis of the problem and the striking similarity that its fact situation bears to the one at hand.

In *Saltsman,* an act was passed which provided for the establishment of police commissions in cities of 35,000 or more in counties of 125,000 or more, a classification in which only Jefferson County and the City of Birmingham could fit. The act was challenged as to its constitutionality on the grounds that it was actually a local law guised as a general one for which the required notice was not published. The Court, agreeing with this contention and referring to such as a "double classification", said at 153 Ala. 653, 45 So. 176:

"The act in question was in no sense a classification of counties, as its manifest object is to create a police board in cities, and pertains in no way to the regulation of counties. Nor is it a bona fide classification of cities, as it expressly excludes cities of the same class, unless located in a county of a certain size. While there are cities in Alabama other than Birmingham with the necessary population, Birmingham is the only one located in a county with a population of 125,000. The substance of the act is for the sole purpose of regulating conditions in Birmingham, although the act is disguised in the garb of a general law. While we do not wish to recede from our former decisions on this subject, and

do not intend by this opinion to give the backing signal, we do think the subject and occasion appropriate for an application of judicial brakes, else section 110 of the Constitution will be absolutely emasculated. The act in question being local, although under the attempted guise of a general law, is repugnant to section 106 of the Constitution, for the reason that no notice was given of the intention to apply for the enactment of same."

The similarity between the above and the present situation is readily apparent. The object of Act 546 is to assess the cities within Jefferson County, and pertains in no way to such regulations and assessments in other counties around the state. For where, as here, a classification within a classification has the effect of simply designating, rather than classifying, cities within Jefferson County and thereby governing the Act's application to such cities, the challenged Act comes within the influence of the following rule as stated in the Opinion of the Justices, supra, 277 Ala. at p. 633, 173 So.2d at p. 796 (1965).

"Our cases make it clear that classification on a population basis cannot make an act general instead of local where the act presents a double classification or other limitations hedging it about so as to prevent its operation in all cities now or hereafter coming within the population classification or where future legislation is required to make the classification applicable to all cities."

It follows that Act 546 was a local act and could not validly have been enacted without compliance with the advertising requirements included in § 106. That section sounds the death knell for any such legislation by providing in specific and rather extraordinary language:

"The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."

It follows from our conclusion on this point that the double classification was constitutionally impermissible.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, McCALL and FAULKNER, JJ., concur.

MADDOX, J., concurs in result.