The defendant, the owner of a junk or salvage yard, was charged in seven separate indictments with the failure to remove the manufacturer's identification number plates from either "junk, salvage or total loss" motor vehicles in his possession in violation of Alabama Code 1975, Section 32-8-87
(c). The trial judge granted the defendant's motion to quash the indictments finding that Section 32-8-87 (c) was "arbitrary and capricious in nature, an abuse of the police power of the State, and violative of the Defendant's rights of due process of law and the equal protection of the laws as guaranteed by the Constitution of the United States and the Alabama Constitution of 1901, as amended." From this ruling the State appeals. Alabama Code 1975, Section 12-22-91.
Section 32-8-87 (c) provides:
 "It shall be unlawful for the owner of any junkyard, scrap metal processing *Page 1054 
plant or salvage yard or his agents or employees to have in their possession any motor vehicle which is junk or salvage or a total loss when the manufacturer's identification number plates, serial plates and motor vehicle license plates have not been removed therefrom in accordance with the provisions of section 32-8-48. Any person who violates this subsection shall, upon conviction, be guilty of a felony and shall be punished by imprisonment in the state penitentiary for not more than five years or by fine of not more than $5,000.00 or by both such fine and imprisonment."
Section 32-8-48 concerns the "scrapping, dismantling or destroying" of a motor vehicle.
 "An owner who scraps, dismantles or destroys a vehicle and a person who purchases a vehicle as scrap or to be dismantled or destroyed shall indicate same on the back of the certificate of title and shall within 72 hours cause the certificate of title, the vehicle identification number plate, the motor vehicle license plate and any other documents or information required by the department to be mailed or delivered to the department for cancellation. A certificate of title of the vehicle shall not again be issued except upon application containing the information the department requires, accompanied by a certificate of inspection in the form and content specified in section 32-8-35."
The trial judge found Section 32-8-87 (c) unconstitutional for the following reasons:
 "(1) That said subsection authorizes one in the Defendant's position to be convicted of a felony while an owner, under Section 32-8-87 (a)[1], or an owner or insurance company, under Section 32-8-87 (b)[2], can, at best, be convicted and punished only for a misdemeanor under the provisions of Sections 32-8-13[3] and 32-8-14[4] for *Page 1055 
failure to comply with the provisions of Sections 32-8-87 (a) and 32-8-87 (b).
 "(2) That said subsection authorizes one in the Defendant's position to be convicted of a felony without any proof that the vehicle in question was even stolen, while the same status of felony is afforded offenders under the provisions of Section 32-8-82[5], wherein a requirement of knowledge of the vehicle being stolen is made an element of the offense therein charged.
 "(3) That said subsection authorizes one in the Defendant's position to be convicted of a felony even if the vehicle in question is not stolen or converted under circumstances which would constitute a crime.
 "(4) That said subsection authorizes one in the Defendant's position to be convicted of a felony without an element of scienter being required, the said subsection being found by the Court to be akin to the larceny statutes of this State — more particularly, the buying, receiving, or concealing of stolen property — by virtue of its being under Article 4 of Chapter 8, which deals with `Antitheft Laws.'[6]
 "(5) That said subsection authorizes one in the Defendant's position to be convicted of a felony even if such vehicle is present on the Defendant's property in such condition as proscribed by said subsection through the negligence of the Defendant's agents, servants, or employees."
The Uniform Motor Vehicle Certificate of Title and Antitheft Act was approved by the National Conference of Commissioners on Uniform State Laws in 1955. 11 U.L.A. 421 (1974). Alabama adopted the substance of the major provisions of the Uniform Act in 1973 (Acts 1973, No. 765, p. 1147) although Alabama's "uniform act" contains "numerous variations, omissions and additional matter." 11 U.L.A. 84 (Supp. 1980).
Section 32-8-87 (c) is not a part of the Uniform Act and represents "additional matter" which Alabama has made a part of its "uniform act". This section is unique to Alabama and is not included in the acts of the other nine states which have adopted the Uniform Act. 11 U.L.A. 84 (Supp. 1980).
Florida had a similar statute. Fla.Stat.Ann., Section 319.30 (3) (West 1975). However, the similarity of the Alabama and Florida statutes was destroyed when the language of the Florida statute was changed in 1978. Fla. Laws 1978, c. 78-412, Section 3; Fla.Stat.Ann., Section 319.30 (3) (West 1979). A search reveals no judicial determination of the constitutionality of the particular provisions of the Florida statute. Also, the constitutionality of Alabama Code 1975, Section 32-8-87 (c) is a question of first impression.
The presumption exists that statutes are constitutional. This Court will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. AlabamaDairy Commission v. Food Giant, Inc., 357 So.2d 139 (Ala. *Page 1056 
1978). The party challenging the constitutionality of a statute has the burden of establishing its invalidity. Jefferson CountyBoard of Health v. City of Bessemer, 293 Ala. 237,301 So.2d 551 (1974).
 I
The constitutional issue implicit in grounds (1) and (2) of the trial judge's findings is whether Section 32-8-87 (c) operates to deny the defendant equal protection of the laws. In substance, the trial judge found that Section 32-8-87 (c) unlawfully discriminated against the defendant because (1) it made junkyard owners liable for a felony while owners and insurance companies were only liable for a misdemeanor and because (2) it did not require knowledge on the part of the junkyard owners of the fact that the vehicle is stolen while owners and insurance companies must have such knowledge.
"The essence of the theory of equal protection of the laws is that all similarly situated are treated alike." City ofBirmingham v. Stacy Williams Co., Inc., 356 So.2d 608, 611
(Ala. 1978). See also City of Hueytown v. Jiffy Chek Co.,342 So.2d 761 (Ala. 1977); Hubbard v. State, 382 So.2d 577
(Ala.Cr.App. 1979), affirmed, Ex parte Hubbard, 382 So.2d 597
(Ala. 1980). Equal protection of the laws does not compel uniformity in the face of difference. Hadnott v. City ofPratville, 309 F. Supp. 967 (N.D. Ala. 1970). The Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently from the others. The test is whether the difference in treatment is an invidious discrimination. Lehnhausen v. Lake Shore Auto PartsCo., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification. Board ofCom'rs of City of Mobile v. Orr, 181 Ala. 308, 61 So. 920
(1913).
Since this case involves neither a "suspect class" nor a "fundamental right", the "rational basis test" is the proper test to apply to either a substantive due process challenge or an equal protection challenge. Gideon v. Alabama State EthicsCommission, 379 So.2d 570, 574 (Ala. 1980).
 "Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose and (b) whether the classification is rationally related to that purpose." Gideon, 279 So.2d at 574.
Without extended discussion and analysis, we have no difficulty in answering both questions affirmatively.
Junk dealers have been recognized as a separate and distinct class for various purposes. 58 Am.Jur.2d Occupations, Trades and Professions, Section 4 (1971). A primary objective of Alabama's Uniform Certificate of Title and Antitheft Act, of which Section 32-8-87 (c) is a part, is to frustrate the possession and disposition of stolen motor vehicles and parts within the State. In the past, Alabama has been referred to as a "dumping ground" for stolen motor vehicles and a haven for automobile theft organizations and operations. Such was due in part to the laxity of our motor vehicle registration laws. By enacting the Uniform Act previously discussed, the legislature made a positive attempt to strengthen such laws and decrease the trafficking of stolen motor vehicles within the state. Section 32-8-87 (c) was added to address a problem not covered by the Uniform Act, that being the regulation of those businesses having the capability to easily conceal stolen motor vehicles and sell or dismantle them and their parts with a minimum of risk and detection. Section 32-8-87 (c) was enacted to protect the public from such evils and to prevent junkyards, scrap metal processing plants, and salvage yards throughout the state from becoming conduits of automobile theft "rings" and "strip shops" of stolen motor vehicles.
That junk and salvage yards offer a special attraction to the thief is a matter of common knowledge.
 "The fact that thieves resort to second-hand dealers, and particularly to junk *Page 1057 
dealers, to dispose of stolen goods, and that unscrupulous and oftentimes criminal persons are engaged in the business is common knowledge." 58 Am.Jur.2d Occupations, etc., at Section 15.
Rosenthal v. New York, 226 U.S. 260, 33 S.Ct. 27,57 L.Ed. 212 (1912), involved the constitutionality of a New York statute making it a criminal offense for a dealer in junk to buy or receive stolen merchandise without having made a diligent inquiry for the purpose of ascertaining whether the person selling or delivering the merchandise had a legal right to do so. The United States Supreme Court, in upholding the constitutionality of that statute, commented:
 "Nor can the act in question be deemed to conflict with the `equal protection' clause because it places junk dealers, etc., in a class by themselves. The argument under this head is that if property of the kinds mentioned in the act is peculiarly susceptible of theft, there is no reason that all persons should not be subjected to the same rules with reference to its purchase. This needs no answer beyond a reference to the well-known fact, alluded to by the New York court of appeals in its opinion herein, that junk dealers provided an important market for stolen merchandise of the kinds mentioned, and that because of their experience they are peculiarly fitted to detect whether property offered is stolen property. Plainly it cannot be said that the classification rests on no reasonable basis. It is unnecessary to rehearse the grounds upon which rests the authority of the states to resort to classification for purposes of legislation." Rosenthal, 226 U.S. at 270, 33 S.Ct. at 30.
The legislature, in defining crimes, has the power to make an act criminal only when done by a particular class of persons if there is a sufficient basis for the classification. 21 Am.Jur.2d Criminal Law, Section 230 (1965).
 "A state, as a part of its police power, may exercise a large measure of discretion, without violating the equal protection guaranty, in creating and defining criminal offenses, and may make classifications as to persons amenable to punishment, so long as the classifications are reasonable and the legislation bears equally on all in the same class. . . . ." 16A C.J.S. Constitutional Law, Section 563a (1956).
The general rule is that "(e)qual protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime, unless it prescribes different punishments for the same acts committed under the same circumstances by persons in like situations." 16A C.J.S. Constitutional Law, Section 564. "(T)he legislature may, without violating the equal protection clause, establish different punishments . . . or it may provide a special punishment for a special class of offenders." Section 564.
The regulations of Section 32-8-87 (c) apply to each member of the group equally. There is no discriminating effect of the statute on any class member. Consequently, we find the class defined by the statute reasonable and not arbitrary or capricious. The statute is equal and nondiscriminating in its application to all members of the class. See generally, AlabamaState Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810
(1914), cert. denied, 325 U.S. 450, 65 S.Ct. 1384,89 L.Ed. 1725 (1945).
In view of the above, we find that Section 32-8-87 (c) does not operate to deny the defendant equal protection of the laws for the reasons stated by the trial judge in numbers (1) and (2) of his opinion.
 II
Section 32-8-87 (c) is not unconstitutional because it imposes strict liability without a requirement of intent or knowledge.
 "Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. The Legislature, however, may forbid the doing of an act and make its *Page 1058 
commission criminal without regard to the intent or knowledge of the doer, and, if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, though not quite universally, applied to the enforcement of statutes passed in aid of the police power of the state where the word `knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt." Smith v. State, 223 Ala. 346, 347, 136 So. 270 (1931).
Generally see, Walker v. State, 356 So.2d 672 (Ala. 1979); LaFave and Scott, Handbook on Criminal Law, Section 31 (1972); Perkins, Criminal Law 812-815 (2nd ed. 1969); Sayre, PublicWelfare Offenses, 33 Colum.L.Rev. 55, 84-88 (1933).
 A statute may simply provide that whoever does (or omits to do) so-and-so, or whoever brings about such-and-such a result, is guilty of a crime, setting forth the punishment. . . . Often this statutory crime has been created in order to help the prosecution cope with a situation wherein intention, knowledge, recklessness or negligence is hard to prove, making convictions difficult to obtain unless the fault element is omitted." LaFave at 218.
Clearly the legislature may make the commission or omission of certain conduct a criminal offense without regard to the intent of the actor. Haywood v. State, 280 Ala. 171, 190 So.2d 728
(1966) (Being on a public road while under the influence of liquor or drugs); Smith, supra (Giving false weights and measures in the sale of gasoline); State v. Southern ExpressCo., 200 Ala. 31, 75 So. 343 (1917) (Transporting prohibited liquor); McKinney v. State, 50 Ala. App. 271, 278 So.2d 719, cert. denied, 291 Ala. 789, 278 So.2d 724 (1973) (Assault with deadly weapon upon police officer); Dixon v. State, 40 Ala. App. 465, 115 So.2d 262, cert. granted, 269 Ala. 593, 115 So.2d 269
(1959) (Possession of a still); Leonard v. State, 38 Ala. App. 138, 79 So.2d 803, cert. denied, 262 Ala. 702, 79 So.2d 808
(1955) (Overweight truck); Fiorella v. City of Birmingham,35 Ala. App. 384, 48 So.2d 761, cert. denied, 254 Ala. 515,48 So.2d 768 (1950) (Possession of lottery tickets); City ofBirmingham v. Reed, 35 Ala. App. 31, 44 So.2d 607 (1949) (Possession of lottery tickets). The Alabama Supreme Court recently recognized this principle but, in Walker v. State,356 So.2d 672 (Ala. 1977), held that knowledge is an essential element of the offense of illegal possession of a controlled substance.
Several of the penal provisions of Alabama's Uniform Certificate of Title and Antitheft Act express an element of intent: Section 32-8-12 ("fraudulent intent" and "knowing"); Section 32-8-13 ("fraudulent intent", "knowingly" and "willfully"); Section 32-8-81 ("intent to deprive"); Section32-8-82 ("knowing"); Section 32-8-83 ("willfully" and "with intent to commit a crime"); Section 32-8-85 ("knowingly"); Section 32-8-86 ("willfully", "with intent", "knowing" and "with knowledge").
Section 32-8-87 (c) contains no mention of any of these or similar terms indicating some type of intent, knowledge or willfulness. This section was an addition to the Uniform Act. In making it a part of Alabama's "uniform act", the legislature had the opportunity to conform it to the language of the various penal provisions within the Uniform Act. This omission, when considered in the context of the entire act, makes it clear that it was the intention of the legislature not to include any element of intent, willfulness or knowledge within the terms of Section 32-8-87 (c). Since the intent of the legislature is clear, this Court cannot declare it otherwise. In interpreting the provisions of a statute, the intent of the legislature must be ascertained and given effect. Lewis v.Hitt, 370 So.2d 1369 (Ala. 1979). Penal statutes must be strictly construed and may not be *Page 1059 
extended by construction. Ballard v. State, 341 So.2d 957
(Ala.Cr.App.), cert. denied, 341 So.2d 962 (Ala. 1977).
 III
The trial judge also found Section 32-8-87 (c) unconstitutional because it "authorized one in the Defendant's position to be convicted of a felony even if the vehicle in question is not stolen or converted under circumstances which would constitute a crime."
 "The legislatures of the several states have the exclusive, and inherent power to prohibit and punish any act as a crime, provided they do not violate the restrictions of the state and federal constitutions; and the courts cannot look further into the propriety of a penal statute than to ascertain whether the legislature had the power to enact it.
 "The act of the legislature in declaring what shall constitute a crime must have some relation to the comfort, welfare, and safety of society; and a criminal statute must be based on reasonable grounds and cannot go beyond the bounds thereof in defining and denouncing an offense, and it must fail when, in making an act criminal, it invades the rights guaranteed by the Constitution. The legislature cannot render that criminal which in its very nature is innocent and esentially nonculpable . . ." 22 C.J.S. Criminal Law, Section 13 (1961).
"The surrender of a certificate of title may be required by statute, and one failing to surrender it may be subject to a statutory penalty." 60 C.J.S. Motor Vehicles, Section 4-(4)(b)(1969).
Section 32-8-87 (c) penalizes the failure to mail to the department of revenue the manufacturer's identification plates, serial plates and motor vehicle license plates as required by Section 32-8-48. This section is not aimed at penalizing the possession of stolen motor vehicles. It penalizes the failure to remove and to mail or deliver the specified identification materials to the department of revenue as required by Section32-8-48. It is Section 32-8-82 which specifically punishes the possession of a stolen vehicle. The crime defined in Section32-8-87 (c) is the possession of a vehicle from which the identification materials have not been removed as required by law and not the possession of a stolen vehicle. Thus the fact that the vehicle is not stolen is not a basis for declaring the statute unconstitutional when the statute was not designed to govern or condemn the possession of stolen property. Consequently, ground (3) of the trial court's finding is erroneous.
 IV
In ground (5) the trial court ruled Section 32-8-87 (c) unconstitutional because it
 "authorizes one in the Defendant's position to be convicted of a felony even if such vehicle is present on the Defendant's property in such condition as proscribed by said subsection through the negligence of the Defendant's agents, servants, or employees."
Section 32-8-87 (c) does not place vicarious liability upon the junkyard owner for the acts of his agents or employees through the doctrine of respondeat superior. Without either the (1) "authorization, procurement, incitation or moral encouragement", or (2) the "knowledge plus acquiescence" of the principal in the acts of his agent or servant, the owner cannot be held criminally liable. Perkins at 812-13. See also Rash v.State, 13 Ala. App. 262, 69 So. 239 (1915).
 "`(P)ossession' by accident or the design of another, without the knowledge of the accused, would (not) suffice; and it is not within the competency of the lawgiver to render that criminal which in its very nature is innocent and essentially nonculpable . . . `Some act of commission or omission lies at the foundation of every crime.'"
* * * * * *
 "`All the authorities agree that an intent to exclude others must coexist with the external facts, and must be fulfilled in the external physical facts, in order to *Page 1060 
constitute possession. It is this requirement which prevents the man in whose building, or automobile, or traveling bag, or pocket, liquor is found, which was surreptitiously placed there by another, from being a violator of the law.' . . . There must be `conscious' possession. . . . This definition has general acceptance. . . . "Knowing possession is not to be confused with criminal intent or guilty knowledge. At common law, scienter is an indispensable element. The constituents of a criminal offense at common law are an evil intention and an unlawful act. Actus non facet reum, nisi mens sit rea . . . But it is within the competency of the lawgiver, in the common interest, to declare an act criminal irrespective of the knowledge or motive of the doer of the act. The Legislature may make the doing of the prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown. . . . The criminal mind is not essential where the Legislature has so willed. The doer of the act may be liable criminally even though he does not know the act is criminal and does not purpose to transgress the law. But it is quite another thing to assess with criminal or penal consequences the unknowing `possession' of contraband articles. That would constitute an abuse of the police power.
 "A corrupt or evil intent is not an element of the possession denounced by the Disorderly Persons Act; but there must be an intention to possess the forbidden papers." State v. Labato, 7 N.J. 137, 80 A.2d 617, 622-23 (1951).
The very definition of the word possession involves the element of knowledge.[7] For these reasons, we find ground (5) of the trial court's order to be erroneous.
In conclusion, we hold that Section 32-8-87 (c) is a valid and constitutional exercise of the state's police power. Its designation of the class described is not arbitrary or unreasonable nor does its proscription unequally apply to any member of the class. State v. Polakow's Realty Experts, Inc.,243 Ala. 441, 10 So.2d 401 (1942), cert. denied, 319 U.S. 750,63 S.Ct. 1155, 87 L.Ed. 1705 (1943). We find that the legislature intended to exclude any element of intent, willfulness or knowledge from Section 32-8-87 (c) and did not intend to criminally punish the owner of one of the enumerated businesses vicariously for the negligent or criminal acts of his agent or employee that fall within the purview of Section32-8-87 (c). This section bears a real and rational relationship to the state's police power and the means adopted thereunder to enforce such are not unreasonable.
Consequently, the trial court erred in sustaining defendant's demurrers to the indictments. The judgments of the Circuit Court are reversed and the causes remanded.
REVERSED AND REMANDED.
All Judges concur.
[1] Section 32-8-87 (a):
"Each owner of a motor vehicle and each person mentioned as owner in the last certificate of title, when such motor vehicle is dismantled, destroyed or changed in such a manner that it is not the motor vehicle described in the certificate of title, shall surrender his certificate of title to the department of revenue, and thereupon said department shall, with the consent of any holders of any liens noted thereon, enter a cancellation upon its records. Upon cancellation of a certificate of title in the manner prescribed by this section, the department shall cancel all certificates and all memorandum certificates in that chain of title."
[2] Section 32-8-87 (b):
"When the frame or engine is removed from a motor vehicle and not immediately replaced by another frame or engine, or when an insurance company has paid money as compensation for a total loss of any motor vehicle, such motor vehicle shall be considered to be salvage. The owner of every motor vehicle in which total loss or salvage has occurred shall, within 72 hours after such total loss or salvage occurs, forward to the department the title to the motor vehicle along with its manufacturer's identification number plates and license plates, whereupon the department shall process the title and plates in a manner prescribed by law or regulation. An insurance company which pays money as compensation for total loss of a motor vehicle shall obtain such vehicle's certificate of title, manufacturer's identification number plates and license plates and, within 72 hours after receiving them, shall forward them to the department for processing. In the event the payment was made because of the theft of the vehicle, which shall be considered as total loss as defined in this section, the insurance company shall, in addition to forwarding the certificate of title as provided herein, forward the vehicle's identification number plates and license plates to the department as soon as practicable after the vehicle is recovered. However, nothing in this subsection shall be applicable when a stolen motor vehicle is recovered in substantially intact condition and is readily resalable without expensive repairs to or replacement of the frame or engine."
[3] Section 32-8-13. Offenses Constituting Misdemeanors:
"A person is guilty of a misdemeanor who:
(1) With fraudulent intent, permits another, not entitled thereto, to use or have possession of a certificate of title;
(2) Willfully fails to mail or deliver a certificate of title or application therefor to the department within 10 days after time required by this chapter;
(3) Willfully fails to deliver to his transferee a certificate of title within 10 days after the time required by this chapter; or
(4) Knowingly and willfully commits a fraud in any application for a title or registration; or
(5) Willfully violates any other provision of this chapter, except as otherwise provided in this chapter."
[4] Section 32-8-14. Penalties:
"Unless another penalty is provided in this chapter:
(1) FELONIES — A person convicted of a felony for the violation of a provision of this chapter is punishable by a fine of not less than $500.00 nor more than $5,000.00, or by imprisonment for not less than one year nor more than 10 years, or by both such fine and imprisonment.
(2) MISDEMEANORS — A person convicted of a misdemeanor for the violation of a provision of this chapter is punishable by a fine of not more than $500.00 or by imprisonment for not more than six months, or by both such fine and imprisonment."
[5] Section 32-8-82. Unauthorized Receiving or Disposing of Vehicles:
"A person not entitled to the possession of a vehicle who receives, possesses, conceals, sells or disposes of it, knowing it to be stolen or converted under circumstances constituting a crime, is guilty of a felony."
[6] Chapter 8 includes sections 32-8-1 through section 3-8-87. This chapter constitutes the "Alabama Uniform Certificate of Title and Antitheft Act." Article 4 of Chapter 8 is entitled "Antitheft Laws."
[7] "The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person whoknowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." (Emphasis added)
Black's Law Dictionary, p. 1047 (5th ed. 1979). *Page 1361