Article IV, § 110, of the Alabama Constitution of 1901, as modified by Amendment No. 397, provides:
 "A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law. . . ."
Article IV, § 106, of the Constitution, as modified by Amendment No. 341, provides:
 "No . . . local law shall be passed on any subject . . . unless notice of the intention to apply therefor shall have been published, . . . in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law . . .; and proof that said notice has been given shall be exhibited to each house of the legislature. . . . The courts shall pronounce void every . . . local law which the journals do not affirmatively show *Page 856 was passed in accordance with the provisions of this section."
(Emphasis added.)
The appellants claim that Act No. 95-775, Ala. Acts 1995 (the Storm Water Act), which applies only to Jefferson County, is a local law. No notice of this law was published. The appellants consequently contend that Act No. 95-775, as well as Ordinance 97-783 (which levied a "fee" to pay for implementation of the Storm Water Act), violates Amendment 341 of the Alabama Constitution.
The trial court entered a summary judgment for Jefferson County, apparently on the basis of Jefferson County's argument that the subsequent codification of Act No. 95-775 had cured any infirmity resulting from the lack of notice. The main opinion predicates its affirmance on this same argument.
I dissent, because Act No. 95-775, the Storm Water Act, was a local law, and Jefferson County has conceded that the proposed Act was not advertised — this fact shows an explicit violation of Amendment 341 — and also because the codification of Act No. 95-775 into §11-89C-1 et seq., Ala. Code 1975, could not cure the constitutional defect embedded in the Act. For each of these reasons, I conclude that Act No. 95-775 was constitutionally invalid and was void ab initio.
The main opinion conflicts with this Court's precedent in both areas. First, it labels Act No. 95-775 as a general act. The following statement is traditionally attributed to Abraham Lincoln: "If you call a tail a leg, how many legs has a dog? Five? No, calling a tail a leg don't make
it a leg." John Bartlett, Familiar Quotations, p. 542 (13th ed. 1955). Likewise, Act No. 95-775 is clearly and unambiguously a local act, and calling it a "general act" does not make it one.
In Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237,241, 301 So.2d 551, 554 (1974), this Court held:
 "A statute is presumed to be valid and the party challenging its constitutionality has the burden of establishing such invalidity."
See also Jefferson County v. Busby, 226 Ala. 293, 295, 148 So. 411, 413
(1933).
However, more than 81 years ago, in a case in which a plaintiff challenged an act as being a local act rather than a general act, this Court stated:
 "If the profession and members of the lawmaking body have been impressed from the previous decisions of this court that legislation may be had for any particular locality by the mere fixing, arbitrarily, of a population classification without a compliance with section 106 of the Constitution, they have misconceived the true meaning and effect of those decisions.
 "In [State ex rel. Crenshaw v. Joseph, 175 Ala. 579, 601, 57 So. 942, 949 (1912)], commenting upon the case of State ex rel. [Saltsman] v. Weakley, [153 Ala. 648, 45 So. 175 (1907)], the court called attention to the fact in that case it was held `that indiscriminate classification as a mere pretext for the enactment of laws essentially local or special cannot be allowed. . . .'
 "And in [Weakley], this court sounded a distinct note of warning to the lawmaking department against the passage of laws with classification so drawn as to be an evasion of the Constitution."
Reynolds v. Collier, 204 Ala. 38, 39, 85 So. 465, 466-67 (1920). InReynolds, this Court analyzed a statute that fixed the salary of the probate judge in counties with a population between 23,150 and 23,250 people. That classification applied to only one county in Alabama — Chilton. *Page 857 
This Court then used a two-part test (refined in City ofBirmingham v. Moore, infra) to ascertain that the statute was premised on an arbitrary distinction and was thus a local act for purposes of § 110. As a result, the Court held that because the act had not been advertised, its adoption violated § 106 and the act was void. This Court concluded:
 "Such legislation as we are here considering has been very properly characterized as `classification run mad.' To uphold it would be but to sanction the utter emasculation of these provisions of our Constitution, and this court will not hesitate to strike down an act so palpably violative of our fundamental law. As said by Justice Lumpkin of the Supreme Court of Georgia:
 "`When the question is, whether we shall maintain a statute or the Constitution, which is a paramount law, and which we are constrained by our oath of office to support and defend we can not hesitate. We must maintain consciences void of offense, whatever we do or omit to do.' Prothro v. Orr, 12 Ga. 36, 40
[(1852)]."
Reynolds v. Collier, 204 Ala. at 40, 85 So. at 468.
In City of Birmingham v. Moore, 248 Ala. 422, 27 So.2d 869 (1946), the plaintiff Moore challenged a statute that authorized the establishment of redevelopment agencies in counties with populations of more than 300,000 residents. Only Jefferson County met that criteron. In refining the test set forth in such cases as Reynolds v. Collier, supra, State ex rel.Brooks v. Gullatt, 210 Ala. 452, 98 So. 373 (1923), and State ex rel.Saltsman v. Weakley (cited in the quotation from Reynolds v. Collier, supra), this Court held:
 "[T]he conditions justifying such classification are equally well established by our cases. The difference in population must be substantial, and the classification must be made in good faith and must be reasonably related to the purpose to be effected by the act. If these conditions exist, the fact that at the time the law may be applicable to only one subdivision of the State will not suffice for its condemnation. On the other hand, if the classification is not in good faith, bears no reasonable relation to the difference in population upon which it rests in view of the purpose to be effected by such legislation, and was arbitrarily fixed, the law will be condemned as local, and as having been passed as merely under the guise of a general law in violation of the Constitution.
". . . .
 "The act here under consideration shows upon its face that it attempts to make an arbitrary classification without proper relation to the subject matter. We are unable to see any logical relation between the classification here employed and the purpose to be attained. . . .
". . . .
 "The act before us cannot survive the test, heretofore stated, by which the character of an act, whether general or local, is to be determined. Judicial ingenuity would exhaust itself in the effort to find any rational basis for the classification it presents. Certainly the fact that the municipalities affected are in the largest county in Alabama bears no legitimate relation to the purpose of the act.
 "In spite of our hesitancy to nullify legislative enactments, judicial candor will not permit us to overlook the obvious fact that this act, both in its conception and in its calculated operation, was local in character. We can only interpret this act as fixing a difference in population purely arbitrary and without pretext of reason or necessity, or *Page 858 substantial merit, and therefore is a local law pure and simple [sic]. It is not saved by a classification reasonably related to its purpose and justifying the discrimination exhibited. The requirements of § 106 of the Constitution not having been met, the act here under consideration is void and must be stricken."
Moore, 248 Ala. at 423-25, 27 So.2d at 871-72 (citations omitted) (emphasis added).
In at least eight other cases over the past 51 years, this Court has held certain laws invalid, despite their designation as general, after concluding that they were local acts, under the standard announced inMoore. The combination of the arbitrary invocation of a population classification with the failure to properly advertise required the Court to hold them invalid. The criteria this Court adopted in Moore has now been written into the Alabama Constitution by Amendment 397.
In Couch v. Rodgers, 253 Ala. 533, 45 So.2d 699 (1950), this Court held invalid a law authorizing a "Barber's Commission" in counties with a population range of 46,500 to 48,000 people. This Court held that that classification was arbitrary because counties of sizes other than that of Cullman (to which alone the population requirement applied) had an equivalent need to regulate barbers. In Nelson v. State, 255 Ala. 141,50 So.2d 401 (1951), this Court held invalid a law that permitted, in counties with more than 400,000 residents, the condemnation of property used to transfer or store lottery papers. The law applied only to Jefferson County. This Court, noting that this law was intended to supplement the existing prohibition of lotteries throughout Alabama, held: "The same considerations apply to such effort in all parts of the State alike so far as we can see." Nelson, 255 Ala. at 143,50 So.2d at 401.
In Opinion of the Justices No. 139, 262 Ala. 425, 81 So.2d 295 (1955), this Court stated that a proposed law, which authorized branch offices for savings and loan institutions on the basis of a classification that applied only to Baldwin County, was a local law because there was "no reasonable basis for the limitation of the applicability of H. 85 to counties with a population of not less than 40,500 nor more than 45,000."262 Ala. at 427, 81 So.2d at 297. In Smith v. Lancaster, 269 Ala. 579,114 So.2d 568 (1959), this Court held invalid a law that authorized the licensure and regulation of plumbers in counties having a population between 80,000 and 94,000 people. This Court noted that the qualifications of plumbers was a legitimate concern throughout Alabama, although this act only applied to Etowah County:
 "It is our view that the Act cannot survive [the Moore, supra,] test. Specifically (without passing on the other elements), we do not think the population classification is `reasonably related to the purpose to be effected by the act.'. . .
". . . .
 "`Notwithstanding our aversion to the nullification of legislative enactments, judicial candor will not permit us to close our eyes to the patent fact that this act, both in its conception and in its calculated operation, was local in character. . . .'"
Smith, 269 Ala. at 582-84, 114 So.2d at 570-71 (quoting Vaughan v.State, 212 Ala. 258, 259, 102 So. 222, 223 (1924)) (citations omitted).
In McDowell v. Columbia Pictures Corp., 281 Ala. 438, 203 So.2d 454
(1967) this Court affirmed a judgment of the Jefferson Circuit Court. That court had struck down a law that authorized a "movie review board" in counties with more than 600,000 people; this classification *Page 859 
caused the law to apply to Jefferson County alone. This Court approved the order of the circuit court:
 "`The objective of the Statute is a most salutary one, being the conservation of the morals and welfare of children under 18 years of age. Such an objective would be of equal concern throughout all of Alabama, including other populous counties beside Jefferson.
 "`Certainly, children reside throughout the state, and motion pictures are exhibited throughout the entire state, in the main being identical wherever shown. . . .
 "`There is nothing about the subject matter of the Statute in question which is peculiar to a particular locality. It is a matter of statewide concern. . . .'"
McDowell, 281 Ala. at 441-42, 203 So.2d at 456-57.
In Duncan v. Meeks, 281 Ala. 452, 204 So.2d 483 (1967), this Court held invalid another law that applied only to Jefferson County. The statute in that case precluded electors in counties with more than 500,000 inhabitants from being able to use one lever to cast a straight party ticket. This Court held: "We are unable to see any logical relation between the classification here employed and the purpose to be attained. . . ." The same considerations were equally valid in other counties outside the statute's population classification. Duncan,281 Ala. at 456, 204 So.2d at 485. In Masters v. Pruce, 290 Ala. 56, 274 So.2d 33
(1973), this Court held invalid a zoning statute that applied only in counties with at least 600,000 people — again, only Jefferson County. The Court's rationale followed that of Moore, supra. In JeffersonCounty Board of Health v. City of Bessemer, 293 Ala. 237, 301 So.2d 551
(1974), this Court held invalid a statute providing financing for boards of health in counties with populations of more than 500,000 residents. Only Jefferson County fell within that classification, and the Court determined that that classification was not a bona fide basis for the statute, given the equivalent policy concerns in other counties.
This Court has ruled in other cases that laws applying to only one county or city were general acts, but all of those cases are easily distinguishable from this case. The purpose of the statute challenged in those cases was genuinely relevant to only one governmental entity. See, e.g., State v. Burchfield, 218 Ala. 8, 117 So. 483 (1928) (law prohibiting owners from allowing "stock" to run at large, in any county whose population exceeds 150,000 people), Ex parte Ashton, 231 Ala. 497,165 So. 773 (1936) (law authorizing circuit courts in counties with populations over 300,000 to consolidate common causes of action), andSmith v. Pullman, Inc., 280 Ala. 295, 193 So.2d 516 (1967) (law precluding the accrual of property taxes while owner's appeal is pending). In the present case, however, the purpose of the act was to deal with the environmental and economic impact related to storm water and its drainage. The policy that underlies this statute is equally valid for other densely populated urban areas. These areas include, but are not limited to, Montgomery, Mobile, and Huntsville. Act No. 95-775 is therefore a local act, not a general act. Consequently, the failure to advertise it void ab initio.
Second, the codification of an invalid statute cannot cure a constitutional defect. The United States Supreme Court resolved this issue 198 years ago in Marbury v. Madison, 5 U.S. 137 (1803). In Marburyv. Madison, the Supreme Court faced a conflict between a statute and a provision of the United States Constitution. Chief Justice Marshall, for a unanimous Court, wrote: *Page 860 
 "The question, whether an act, repugnant to the constitution, can become the law of the land, is a question deeply interesting to the United States; but, happily, not of an intricacy proportioned to its interest. . . .
". . . .
 ". . . The constitution is either a superior, paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it.
 "If the former part of the alternative be true, then a legislative act contrary to the constitution is not law: if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable.
 "Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and, consequently, the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void.
". . . .
 "It is emphatically the province and duty of the judicial department to say what the law is. . . .
". . . .
 "Those, then, who controvert the principle that the constitution is to be considered, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the constitution, and see only the law.
 "This doctrine would subvert the very foundation of all written constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory. It would declare that if the legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure.
 "That it thus reduces to nothing what we have deemed the greatest improvement on political institutions, a written constitution, would of itself be sufficient, in America, where written constitutions have been viewed with so much reverence, for rejecting [this] construction. But the peculiar expressions of the constitution of the United States furnish additional arguments in favour of its rejection."
Marbury, 5 U.S. at 176-78. See also Ex parte James, 713 So.2d 869, 879
(1997) ("Long before Alabama acquired statehood, judicial decisions had recognized the power — as well as the duty — of the judiciary to review, and if necessary, nullify, acts of the legislature it deemed to be inconsistent with the fundamental law of the land.").
Consistent with Marbury v. Madison, James, and Prothro (quoted inReynolds v. Collier, supra), I conclude that the Legislature's codification of Act No. 95-775 into § 11-89C-1 et seq., Ala. Code 1975, could not cure the constitutional defect that arose when the Legislature adopted this local act, even though it had not been advertised as mandated by Amendment No. 341. The main opinion conflicts with the precedent established by Marbury v. Madison and the cases following it. The codification of Act No. 95-775 could not supersede Amendment 341 to the Constitution. To the degree that prior cases of this Court or our Courts of Appeals conflict with this rule, those cases (including, *Page 861 
but not limited to, Ex parte State Department of Revenue,683 So.2d 980, 982 (Ala. 1996), Ex parte Coker, 575 So.2d 43 (Ala. 1990), Fuller v. Associates Commercial Corp., 389 So.2d 506, 509 (Ala. 1980), Opinion of the Justices No. 81, 249 Ala. 511, 31 So.2d 721
(1947), Opinion of the Justices No. 63, 244 Ala. 384, 13 So.2d 762
(1943), State v. Golden, 531 So.2d 941 (Ala.Crim.App. 1988)), should be overruled.
In addition, I note an issue in this case that the parties have not raised, but which should be dispositive. Act No. 95-775, codified as § 11-89C-1 et seq., Ala. Code 1975, authorized the creation of a "Storm Water Management Authority" by "[t]he governing bodies of all Class 1 municipalities within the state and the county governing bodies in which the Class 1 municipalities are located and the governing bodies of all municipalities located [wholly or partially] within those counties. . . ." § 11-89C-2.
Sixteen years ago, this Court established this precedent: "[I]n the absence of a designation to the contrary the population of cities for the purposes of Act No. 84-808 is determined by the last preceding decennialcensus." Alabama Citizens Action Program v. Kennamer, 479 So.2d 1237,1242 (Ala. 1985) (emphasis added). Two years later, this Court carved out an exception to that rule, an exception not here relevant, where there has been an "interim census conducted by the United States Department of Commerce, Bureau of the Census." Dennis v. Pendley, 518 So.2d 688, 690
(Ala. 1987).
Section 11-40-12, Ala. Code 1975, defines a "Class 1 municipality" as any city "with a population of 300,000 inhabitants or more." The population of Birmingham, however, as determined by the 1990 Federal Census, was 265,965 people. The population of Birmingham, as determined by the 2000 Federal Census (preliminary), was 242,820. Alabama CitizensAction Program v. Kennamer, 479 So.2d 1237, 1242 (Ala. 1985) (holding that in the absence of a designation in the statute itself the population of a city is "determined by the last preceding decennial census").
Consistent with Moore, supra, I take judicial notice of the fact that Birmingham is the largest city in our state. Act No. 95-775 was enacted in 1995. Because no city in Alabama has met the criterion for being a Class 1 municipality, since at least 1990, Act No. 95-775, did not, and still does not, apply anywhere in Alabama.
Accordingly, this Court should hold that Act No. 95-775 was void abinitio, for three separate reasons. First, Act No. 95-775 is a local act that was not advertised — this failure was an explicit violation of Amendment 341 of the Alabama Constitution. Second, the codification of Act No. 95-775 could not supersede a provision of the Alabama Constitution. Third, this Court's analysis of those issues the parties here raised is made pointless by the threshold defect inherent in a law that limits its scope to counties containing Class 1 municipalities — when Alabama does not have a Class 1 municipality and has not had one since before this law was enacted.
For these reasons, I respectfully dissent.