176 So.2d 884

**STATE of Alabama**

v.

**James E. MILLS.**

**6 Div. 950.**

Supreme Court of Alabama.

March 4, 1965.

Rehearing Denied July 15, 1965.

Alfred Swedlaw, Kenneth Perrine, Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for appellee.

Emmett Perry, Circuit Sol., Birmingham, Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for appellant.

Chas. Morgan, Jr., Birmingham, and Herbert S. Channick, New York City, for Civil Liberties Union, amici curiae.

Jas. C. Barton, Alan W. Heldman and Deramus & Johnston, Birmingham, for Alabama Press Ass'n, amici curiae.

LIVINGSTON, Chief Justice.

This is an appeal by the State of Alabama, under and by virtue of the provisions Sec. 370, Title 15, Code of Alabama 1940, from a judgment of the Jefferson County Criminal Court sustaining a demurrer to an amended criminal complaint, on the grounds that the statute on which the said criminal complaint was based, Sec. 285, Title 17, Code of 1940, is unconstitutional.

The Birmingham Post-Herald is a daily newspaper of general circulation, published in the City of Birmingham, Alabama. James E. Mills, the appellee, is the editor of that newspaper.

On November 6, 1962, an election was held in the City of Birmingham, Alabama, to determine whether or not the City of Birmingham was to retain the then existing commission form of city government or to replace it by another form.

In the November 6, 1962 issue of the Birmingham Post-Herald, which was distributed to purchasers of and subscribers to that newspaper, was an editorial which was authorized by Mr. Mills, in words and figures as follows:

"Do We Need Further Warning?

"Mayor Hanes' proposal to buy the votes of city employees with a promise of pay raises which would cost the taxpayers nearly a million dollars a year was enough to destroy any confidence the public might have had left in him.

"It was another good reason why the voters should vote overwhelmingly today in favor of Mayor-Council government.

"Now Mr. Hanes, in his arrogance, proposes to set himself up as news censor at City Hall and 'win or lose' today he says he will instruct all city employees under him to neither give out news regarding the public business with which they are entrusted nor to discuss it with reporters either from the Post-Herald or the News.

"In other words, it is Mr. Hanes' plan to give to the people of Birmingham only the news he wants them to have and only in the light in which he sees fit to present it.

"The mayor makes a mistake, however, if he thinks he can black out news from City Hall. He is mistaken, too, if he thinks the citizens of Birmingham will let him get away with so brazen an attempt to deny them ready access to what they have a right to know about all that goes on at City Hall.

"Do the people of Birmingham need a more serious warning?

"If Mayor Hanes displays such arrogant disregard of the public's right to know on the eve of the election what can we expect in the future if the City Commission should be retained?

"Let's take no chances.

"Birmingham and the people of Birmingham deserve a better break. A

vote for Mayor-Council government will give it to them."

Section 285 of Title 17, Code of 1940, reads as follows:

"Corrupt practices at elections enumerated and defined.—It is a corrupt practice for any person on any election day to intimidate or attempt to intimidate an elector or any of the election officers; or, obstruct or hinder or attempt to obstruct or hinder, or prevent or attempt to prevent the forming of the lines of the voters awaiting their opportunity or time to enter the election booths; or to hire or to let for hire any automobile or other conveyance for the purpose of conveying electors to and from the polls; or, to do any electioneering or to solicit any votes or to promise to cast any votes for or against the election or nomination of any candidate, or in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held."

Based on the foregoing editorial, a citizen swore to a criminal complaint charging Mills with violation of Sec. 285 of Title 17, supra.

The criminal complaint as amended charged that the publication and distribution of the editorial constituted "electioneering" or "soliciting votes in support of a proposition which was being voted on on the day that the election affecting such proposition was being held."

A demurrer to the amended complaint was filed by the defendant Mills, appellee. Each ground of the demurrer challenged the constitutionality of said Sec. 285 of Title 17, supra. The demurrer to the complaint as amended was sustained, the judgment specifying that the statute was unconstitutional as violative of (1) Article 1, Sec. 4 of the Constitution of Alabama 1901, (2) Article 1, Sec. 6 of the Constitution of Alabama 1901, (3) the First Amendment to the Constitution of the United States, and (4) the Fourteenth Amendment to the Constitution of the United States.

These constitutional provisions read as follows:

Article 1, Secs. 4 and 6, Constitution of Alabama 1901:

"Section 4. That no law shall ever be passed to curtail or restrain the liberty of speech or of the press; and any person may speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.

"Section 6. That in all criminal prosecutions, the accused has a right to be heard by himself and counsel * * * and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law; * * *."

The First Amendment, Constitution of the United States of America, reads, in pertinent part, as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; * * *."

The Fourteenth Amendment, Constitution of the United States of America, reads, in pertinent part, as follows:

" * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." The state appealed.

The principles by which courts are guided when it is sought to strike down an act of the legislature as violative of the Constitution are clearly and concisely stated in Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810, where the late Chief Justice Gardner said:

"At the outset reference may be made, as is often done, to the principles by which courts are guided when it is sought to strike down as violative of the constitution a legislative act. Uniformly, the courts recognize that this power is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.

"Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom. 11 Am.Jur. pp. 799–812; A. F. of L. v. Reilly, District Court of Colorado, 7 Labor Cases No. 61,761.

"The broad doctrine as thus announced is sustained by the weight of authority, both in the Federal and the state courts. For our own State the cases of City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61, and State v. Ala. Fuel & Iron Co., 188 Ala. 487, 66 So. 169, L.R.A.1915A, 185 Ann. Cas.1916E, 752, furnish apt illustrations. And as for the Federal courts, reference may be made to Flint v. Stone Tracy Co., 220 U.S. 107, 31 S. Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312."

■ Our cases are legion to the effect that all presumptions and intendments should be indulged in favor of the validity of a statute, and its unconstitutionality should appear beyond a reasonable doubt before it will be held invalid. Statutes must be construed, if fairly possible, so as to avoid not only a conclusion that it is unconstitutional, but also grave doubts on that score. Nat'l Reporter System, Constitutional Law, ⛄48; Vol. 4, Alabama Digest, Constitutional Law, ⛄48, pp. 710–714; Constantine v. United States, 5 Cir., 75 F.2d 928; 295 U.S. 730, 55 S.Ct. 922, 79 L.Ed. 1679; 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233; State ex rel. Woodward v. Skeggs, 154 Ala. 249, 46 So. 268; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Lincoln Mills of Ala. v. Davis, 5 Cir., 89 F.2d 1012, 302 U.S. 772, 58 S.Ct. 3, 82 L.Ed. 599; Stone v. State, 233 Ala. 239, 171 So. 362.

■ The legislature may enact laws reasonably regulating elections, and the state may under its "police power" enact laws which interfere indirectly and to a limited extent with freedom of speech or the press, if reasonably necessary for pro-

tection of the general public. 16 C.J.S. Constitutional Law § 213(23), p. 1157; Alabama State Federation of Labor v. McAdory, supra; Nat'l Reporter Systems, Elections, ☞228 and 231; State ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N.W. 895, 69 A.L.R. 348, 376; Ex parte Hawthorne, 116 Fla. 608, 156 So. 619, 623, 96 A.L.R. 572; Branton v. State, 214 Ark. 861, 218 S.W.2d 690; 338 U.S. 878, 70 S.Ct. 155, 94 L.Ed. 538; 18 Am.Jur., p. 336, par. 235, "Elections"; Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626; In re Mack, 386 Pa. 251, 126 A.2d 679, 681.

■ Freedom of speech or freedom of the press is susceptible to only such restrictions as are necessary to prevent grave and immediate danger to interests which the state may lawfully protect. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628.

■ A full exercise of the right of citizenship includes, not only the right to vote, by those possessing the prescribed qualifications, but the right to assemble, the right of free speech, the right to present one's views to one's own fellow citizens, but *these rights are subject to restraint by reasonable regulation.*

■ In numerous cases in this court, it has been made as plain as it is possible to make it that the regulation of these rights is subject to constitutional limitations, and, if unreasonable, must be declared void. Laws of this kind lie within the police power field and are subject to the same constitutional limitations as are laws dealing with the right to life, liberty and property. The right of the legislature to exercise the police power is not referable to any single provision of the Constitution. It inheres in and springs from the nature of our institutions, and so the limitations upon it are those which spring from the same source as well as those expressly set out in the Constitution. But legislative action is always subject to the test of *rea-*

*sonableness.* A review of all the cases in which courts have considered the reasonableness of laws enacted by legislatures in the exercise of the police power would leave us about where we began.

■ A clear distinction must be drawn between cases passing upon the reasonableness of an act of the legislature and cases having to do with the reasonableness of municipal ordinances, the reasonableness of classifications, etc. The fundamental principles governing the exercise of the police power by the legislature have been considered many times by this court. A court may not declare a law void for unreasonableness because it is unwise or prescribes a limitation more restrictive than the court thinks proper. If a law is germane to the subject with which it deals, that is, is not passed for the purpose of securing some ulterior objective, and is in fact within the field of regulation, if it tends to conserve rather than destroy, it is beyond the scope of judicial interference.

■ There is no yardstick by which reasonableness may be measured with mathematical certainty. This court holds in accordance with the great weight of authority that a law cannot be held to be invalid because unreasonable, unless and until it appears beyond reasonable controversy that it unnecessarily impairs to the point of practical destruction a right safeguarded by the Constitution. As has already been pointed out, the law under consideration lies within the police power field and impairs only the right of free speech, which includes the right to write and publish one's views.

Does a law which prohibits "soliciting votes" or "electioneering" on election day so unreasonably invade the constitutional right of free speech or free press as to be void? In order to entitle the court to declare the law void on that ground it is not sufficient that the restriction is greater or less than the court might think wise. It is not sufficient that it may appear to the court that it may operate as a restraint upon the

information and education of the electorate. Before the act can be set aside, it must appear beyond reasonable controversy to the court that the law in question tends to destroy rather than conserve and is not germane to the purpose sought to be achieved.

Out of the facts the law arises, and we come now to the application of the foregoing principles to the facts of the case at hand.

The statute declares it a corrupt practice for any person on any election day to do "any electioneering or to solicit any votes * * * in support of or in opposition to any proposition that is being voted on on the day on which the election affecting such candidates or propositions is being held."

 There can be no sort of doubt that the editorial distributed on the election date violates the Corrupt Practice Act of soliciting votes or electioneering on election day. The editorial for which appellee was responsible stated:

"It was another good reason why the voters should *vote overwhelmingly today* in favor of Mayor-Council government," and further

"Let's take no chances. Birmingham and the people of Birmingham deserve a better break. A *vote* for Mayor-Council government will give it to them." (Emphasis supplied.)

The real question in the case is: Did the Alabama Legislature exercise reasonable use of police power, in an effort to maintain orderly elections, in limiting full free speech and freedom of the press, by denying to all persons the right to solicit votes, or electioneer, while the electorate recorded their wishes at the polling booths on election day?

 We are of the opinion that it did. In deciding whether any police regulation is reasonable, the courts must look at all the surrounding circumstances. If the legislature thought such regulations are necessary and reasonable, the courts have not stricken same as violative of constitutional rights, because the courts thought of better means, in their judgment, of handling the danger. Generally speaking, courts have stricken such legislative acts only if they have the effect, under all the circumstances, of practically destroying the constitutional rights.

The pertinent statute being within the field in which the legislature may properly and constitutionally exercise the police power, the act does not so clearly appear to be an unwarrantable interference with the guaranteed constitutional right that it is within the power of the court to declare it void; on the contrary, the restriction, everything considered, is within the field of reasonableness.

Appellee cites the case of Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626. But as we read that case, it supports the principles we have applied in this case. We quote the following from it:

"It is a fundamental principle, long established, that the freedom of speech and of the press which is secured by the Constitution, does not confer an absolute right to speak or publish, without responsibility, whatever one may choose, or an unrestricted and unbridled license that gives immunity for every possible use of language and prevents the punishment of those who abuse this freedom. * * *

"Reasonably limited, it was said by Story in the passage cited, this freedom is an inestimable privilege in a free government; without such limitation, it might become the scourge of the republic."

 It is undeniable that it is reasonably necessary that all elections be conducted in an orderly fashion. It is a salutary legislative enactment that protects the public from confusive last-minute charges and countercharges and the distribution of propaganda in an effort to

influence voters on an election day; when as a practical matter, because of lack of time, such matters cannot be answered or their truth determined until after the election is over.

 Appellee argues that Sec. 285, Title 17, Code, should be declared void and unconstitutional for uncertainty. We cannot agree. The cases cited in support of the argument are readily distinguishable from the instant case. The provisions of the Corrupt Practice Act, as applied to the facts of this case, are clear, unambiguous and not an unreasonable limitation upon free speech, which includes free press.

Reversed and remanded.

SIMPSON, MERRILL and HARWOOD, JJ., concur.