Henry M. Brady filed a petition for a writ of mandamus in the Circuit Court of Mobile County, asking that the State Pilotage Commission be directed to issue to *Page 778 
him a Mobile bar pilot's license. The circuit court refused to issue the writ and Brady appeals.
Pursuant to Title 38, section 57, Code 1940 (Recompiled 1958), for an individual to qualify as a pilot, he "must have served one year on the Mobile bar as an apprentice and three years in Mobile ship channel, or at sea, and must hold a first class federal license for same before being branched." Title 38, section 59, provides that applicants for a pilot's license shall be branched or licensed according to the service seniority of their apprenticeship. The Commission interpreted section 59 to mean that seniority status was obtained upon the completion of one year's service as an apprentice on the Mobile bar.
In 1961 the legislature amended several sections of Title 38, Code 1940, see Alabama Acts 1961, Ex.Sess., No. 104, p. 2024, relating to bar pilots and pilotage. The requirements for obtaining a pilot's license, which were set out in Title 38, section 57, remained unchanged. These requirements are now codified at section 33-4-31, Code 1975.
The 1961 act did, however, change the seniority status provision set forth in Title 38, section 59. Under the terms of the 1961 act, now codified at section 33-4-34, Code 1975, applicants for a license "shall be branched or licensed according to seniority of the date of completion of all requirements of their apprenticeship." In other words, upon the passage of the 1961 act, to obtain seniority for receiving a pilot's license, it was no longer sufficient to have merely completed the one-year apprenticeship requirement on the Mobile bar. An applicant had to complete this requirement, but he also had to complete all the other requirements for obtaining a pilot's license, except for passing a written examination.
Henry Brady, the appellant, commenced his apprenticeship on the Mobile bar in 1962 and completed all the other requirements for obtaining a pilot's license (other than the written examination) on February 28, 1964. John C. Gray completed his apprenticeship on the Mobile bar in 1959, but he did not complete the other requirements for obtaining a pilot's license (other than the written examination) until September 10, 1965. Both Gray and Brady passed the written examination certifying their competence to fill appointments as pilots on the same date.
In June 1984 Gray was licensed by the Commission as a Mobile bar pilot. Brady has not been licensed as a bar pilot, nor has he been informed by the Commission why he has not been so licensed.
Brady argues here that he completed all the requirements for licensing as set out in sections 33-4-31 and -34, Code 1975, before Gray did and, therefore, he should have been licensed ahead of Gray.
The Commission replies that Gray was properly licensed ahead of Brady because Gray completed his one-year apprenticeship on the Mobile bar before Brady completed such apprenticeship.
Clearly, Act No. 104 applies to Brady because he commenced his apprenticeship training in 1962 and completed it in 1964. What is not clear is whether Act No. 104 applies to Gray. Brady argues that Act No. 104 places all apprentices not yet licensed as pilots into the same category as to seniority, and provides that the apprentices are to be licensed according to the date of their completion of all qualifications of apprenticeship.
The issue before this court then is whether section 33-4-34, which was adopted by the legislature in 1961, should have prospective effect only, or should have retrospective effect as well. If section 33-4-34 has prospective effect only, then Gray established his right to be given a license ahead of Brady because he had completed the one-year apprenticeship on the Mobile bar before Brady did. If section 33-4-34 has retrospective as well as prospective effect, Brady completed the requirements for apprenticeship before Gray did and should have been licensed ahead of Gray.
As a general rule, statutes will not be construed to have a retroactive effect unless the language of the statute expressly *Page 779 
indicates such intent by the legislature. Jones v. Casey,445 So.2d 873 (Ala. 1983); Kittrell v. Benjamin, 396 So.2d 93 (Ala. 1981). Remedial statutes, however, are not within the realm of retrospective restriction and absent clear language to the contrary, do operate retroactively. Street v. City of Anniston,381 So.2d 26 (Ala. 1980). "Remedial legislation" relates to remedies, modes of procedure, or changes in existing laws which do not create or take away any vested rights. Jones v. Casey,supra; see also 73 Am.Jur.2d Statutes § 354 (1974).
Alabama's definition of remedial legislation is quite clear. Remedial statutes are those "which impair no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies." Dickson v. Alabama Machinery Supply Co.,18 Ala. App. 164, 89 So. 843, cert. denied, 206 Ala. 698,89 So. 922 (1921). The courts have gone on to state that "where a new statute deals with procedure only, prima facie it applies to all actions, those which have accrued or are pending and future actions." Harlan v. State, 31 Ala. App. 478, 18 So.2d 744
(1944), quoting Sutherland on Statutory Construction, p. 630.
Under both the 1940 statute and the 1961 amendments, all applicants for licensing by the Pilotage Commission were required to fulfill certain requirements in order to even be considered a qualified candidate for a license.
 "[A] license is merely a permit or privilege to do what otherwise would be unlawful. It is not a contract or obligation between the authority . . . granting it and the person to whom it is granted. . . . [S]trictly speaking, it is not property or a property right, nor does it create a vested right."
53 C.J.S. Licenses § 2 (1948) (footnotes omitted); see Harry E.Prettyman, Inc. v. Florida Real Estate Commission, 92 Fla. 515,109 So. 442 (1926).
The legislature has the power to determine at what point licensing is to begin and at what point it shall end. State v.Spann, 270 Ala. 396, 118 So.2d 740 (1959). Additionally, prior to eligibility for a license and absent a saving clause, the legislature can change the requirements of an existing licensing statute. "In the absence of any saving clause, a new law changing a rule of practice is generally regarded as applicable to all cases then pending." 73 Am.Jur.2d, Statutes § 354 (1974) (footnote omitted); see Hardman v. Personnel Board,100 R.I. 145, 211 A.2d 660 (1965).
Based on the above listed legal principles, we conclude that the Commission misapplied the law by licensing Gray ahead of Brady.
Apparently, the legislature amended the old statute to assure a ready supply of fully qualified apprentices to fill any vacancies that might occur in the pilot ranks. Conceivably, under the old statute, apprentices who claimed seniority according to their one-year apprenticeships on the Mobile bar would not be available for active duty as bar pilots because they had not yet completed the other requirements for a pilot's license. See § 33-4-31, Code 1975; Tit. 38, § 57, Code 1940. This problem is illustrated by the fact that Gray completed his one-year apprenticeship in 1959, but did not complete all the requirements for branching or licensing until 1965. Although Gray may have stood first in line, he still could not have been licensed as a pilot had a vacancy occurred prior to 1965, because he had not yet met the requirements for obtaining a license. The present statute remedies the above problem by requiring that applicants for a license complete all requirements therefor before obtaining seniority to be branched.
We conclude that the 1961 amendatory statute is remedial in nature and was meant to clarify the procedural tasks of the Commission. The language of the two statutes is substantially similar, the only relevant change being the time of licensing seniority. The requirements necessary to qualify as an applicant remained virtually unchanged.
Under either statute a person was not entitled to licensing until he was qualified *Page 780 
as a candidate. In 1959 Gray had completed but one of the requirements necessary to qualify as such a candidate. When the amendments were passed, Gray had nothing more than an expectation in a license. He was not divested of any rights due to the new statute, because by the very nature of the statute he had no rights that had vested.
It is a generally accepted rule that a right is not "vested" unless it is more than an expectation based on present laws. "A mere expectation based upon the continuance of the present general laws cannot be regarded as a vested right." Samples v.State, 19 Ala. App. 478, 98 So. 211 (1923), cert. denied,210 Ala. 544, 98 So. 803 (1924).
Brady, being the first applicant to comply with all the statutory requirements, was, therefore, entitled to be licensed ahead of Gray. For the above reasons, the trial court erred in denying the writ of mandamus.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.