MADDOX, Justice.
Henry M. Brady filed a petition for writ of mandamus in the Circuit Court of Mobile County, asking that the State Pilotage Commission be directed to issue to him a Mobile bar pilot’s license. The court refused to issue the writ; Brady appealed to the Court of Civil Appeals, and that court reversed the trial court’s judgment and granted the writ. The Commission filed an application for rehearing in the Court of Civil Appeals and requested that court to supplement the facts in its opinion, but that court refused to do so, and denied rehearing. The Commission then filed a petition for writ of certiorari, which we granted to review the judgment of the Court of Civil Appeals. Our review is based upon the facts stated in the opinion of that court and in the additional statement of facts requested by the State Pilotage Commission pursuant to Rule 39(k), Ala.R.App.P. A short summary of the controversy is set out in that opinion, as follows:
“Henry Brady, the appellant, commenced his apprenticeship on the Mobile bar in 1962 and completed all the other requirements for obtaining a pilot’s license (other than the written examination) on February 28, 1964. John C. Gray completed his apprenticeship on the Mobile bar in 1959, but he did not complete the other requirements for obtaining a pilot’s license (other than the written examination) until September 10, 1965. Both Gray and Brady passed the written examination certifying their competence to fill appointments as pilots on the same date.
“In June 1984 Gray was licensed by the Commission as a Mobile bar pilot. Brady has not been licensed as a bar pilot, nor has he been informed by the Commission why he has not been so licensed.
“Brady argues here that he completed all the requirements for licensing as set out in sections 33-4-31 and -34, Code 1975, before Gray did and, therefore, he should have been licensed ahead of Gray.
“The Commission replies that Gray was properly licensed ahead of Brady because Gray completed his one-year apprenticeship on the Mobile bar before Brady completed such apprenticeship.”
Brady v. State Pilotage Commission, 496 So.2d 776 (Ala.Civ.App.1985).
As already stated, the State Pilotage Commission requested the Court of Civil Appeals, pursuant to the provisions of Rule 39(k), Ala.R.App.P., to include additional facts in its opinion. The additional statement is as follows:
“1. Capt. John Chason Gray, who has been licensed or ‘branched’ by the State Pilotage Commission, began serving his apprenticeship as a bar pilot in 1957.
“2. Capt. Gray completed his apprenticeship in 1959.
“3. Under the law in effect in 1959, ‘applicants shall be branched or licensed according to the service seniority of their apprenticeship’. Ala. Code 1940, Tit. 38, § 59.
“4. In 1961, Gray became eligible for the next vacancy, the legislature made several technical changes in the State laws regulating pilotage, and Ala. Code. Tit. 38, § 59 [now Ala. Code 1975, § 33-4-34] was amended to say that ‘applicants shall be branched or licensed according to the seniority of the date of completion of all requirements of their apprenticeship.’
“5. Henry M. Brady (who was not licensed, and who filed this suit) began his apprenticeship the year following the amendment, on August 14, 1962, five years after Capt. Gray began his.
“6. Mr. Brady completed his apprenticeship on January 7, 1964, almost five years after Gray completed his apprenticeship.
“7. In any event, the last requirement necessary to become a bar pilot is to pass an examination, see Ala. Code 1975, § 33-4-30, and both Gray and Brady passed it on the same day.
*782 “8. As early as 1973, Brady began to agitate to be placed ahead of Gray, Man-ders, and Cook (all of whom were senior to Brady), in a letter containing citations of law.
“9. The State Pilotage Commission answered that it had the matter ‘under study'.
“10. At its March 21, 1973 meeting, the Pilotage Commission sent word to Capt. W.P. Adams, who had been its President in 1961, ‘to check with Atty. Jos. C. Sullivan who drew up the bill at that time’ in 1961.
“11. The next week back in 1973, Atty. Joseph C. Sullivan, the author of the very statute on which Brady bases his case, wrote a four-page legal opinion letter to the State Pilotage Commission in which he opined that (1) a statute is not retroactive unless the legislature ‘expresses a clear intention to give the enactment a retroactive application’ (citing Alabama authority), (2) the legislature in passing Mr. Sullivan’s statute clearly did not intend to make it retroactive, and (3) even if the legislature had intended to make it retroactive it could not operate to divest John Chason Gray of his vested position of seniority. Mr. Sullivan legally opined to the State Pilotage Commission that Henry M. Brady was not correct in claiming entitlement to being licensed or branched before Capt. John Chason Gray.
“12. In January of 1974, Atty. Robert S. Edington, counsel in this case, wrote the State Pilotage Commission that he had ‘been instructed to undertake court action to determine Mr. Brady’s seniority rights, if the matter cannot be resolved at a conference.’
“13. Suit was not filed, however, until eleven years later.
“14. Six months after Mr. Edington’s letter, since Mr. Edington had not by then filed suit against the Pilotage Commission, the Commission relegated the issue to ‘old business,’ with the minutes notation in June of 1974. — eleven years before suit was filed — that:
“ ‘Mr. Leatherbury s[t]ated that he had not heard any more from Mr. Eding-ton, and apparently] the ruling of Atty. Mr. Jos. Sullivan is correct. Capt. G.W. Mareno explained the apprentice system prior to the year 1961.’
“15. At the September, 1974 meeting, nine months after Mr. Edington had notified the Pilotage Commission that he had been authorized to sue, the Commission noted a second time in its minutes that ‘[t]here was no further contact with Atty. Mr. Edington.’
“16. In March of 1977, Mr. Brady wrote a letter to the Chairman of the State Pilotage Commission, on plain bond paper (beautifully typed with a type-face quite similar to Mr. Edington’s) pointing out ‘that there is legislation pending in the Alabama Senate and House of Representatives ... [which] is being presented with the apparent intention of settling differing opinions of seniority as to who actually is branched next.’
“17. Mr. Brady’s letter recommended that the legislation settling the issue once and for all not be passed, noting that the State Pilotage Commission should decide how many bar pilots there should be, and who they should be. Here is what Mr. Brady said then, so markedly and inexplicably different from what he and his lawyer are now telling the Appellate Courts of Alabama:
“ ‘I am therefore of the opinion that the Mobile Bay Bar Pilots — through the State Pilotage Commission — is entirely capable of arriving at a proper amount of pilots necessary to handle ship traffic in the port.
“ ‘Secondly, in regard to the Pilot Commission, it is not unlike other states to have such a body to regulate necessary matters that come under dispute. This is the purpose of these commissions— making decisions as they arise — based on professional judgment. To dilute this already proven authority would be setting unneeded precedence [sic] and would curtail this Commission in making those decisions which they were designed to make....
*783 “ ‘Personally, I therefore consider the State Pilotage Commission in its present form to be entirely capable of deciding all matters with regard to the branching and number of pilots in Mobile, Alabama. Further, this Commission is above state judicial review, further guaranteeing fairness to all concerned: Steamship Companies, Apprentice Pilots, etc.’
“(Letter of Mr. Brady to the Chairman of the State Pilotage Comm’n, 3/4/77, R. 110).
“18. On May 31, 1984, the Mobile Bar Pilots Association petitioned the State Pi-lotage Commission to fill the vacancy created when Capt. John W. Miller died.
“19. On June 27, 1984, Capt. John Chason Gray was branched as a bar pilot.”
The Court of Civil Appeals, construing the various applicable statutes and their intended purpose, concluded that “Brady being the first applicant to comply with all the statutory requirements was, therefore, entitled to be licensed ahead of Gray.” 496 So.2d, at page 780.
The State Pilotage Commission raises several issues in its petition here. We will address each.
I
The Commission contends that the judgment of the trial court should have been affirmed because the record shows on its face that Brady was guilty of “unreasonable delay” in asserting his claim, and that the principle of laches applies, because, the Commission argues, “[t]he facts show that plaintiff slept on his rights for eleven years.” The Commission contends that in 1974 Brady had already retained his present counsel, who wrote the Commission that he had “been instructed to undertake court action to determine Mr. Brady’s seniority rights, if the matter cannot be resolved at a conference.” Brady does not dispute the fact that his attorney wrote the letter to the Commission in 1974, but he contends that the Commission never took any action to grant him a conference or otherwise to notify him officially of the action the Commission would take or had taken regarding his seniority rights. Consequently, Brady argues that until the Commission formally took action to grant Gray seniority, there was not a justiciable controversy on which any litigation could be based. Brady argues, in his brief:
“No argument relating to laches can be raised in connection with any action or inaction of Captain Brady prior to the date that Captain John Gray was licensed, in that Captain Brady rightfully assumed that he would be the next person licensed by the State Pilotage Commission under the Alabama Code, § 33-4-34. Captain Brady had no reason whatsoever to believe that the State Pilo-tage Commission would act contrary to the statute, especially since he had put the State Pilotage Commission on notice as to his position.”
Brady claims that the reason he allowed six months to pass after Gray’s appointment before he filed his petition was that he was at sea when he heard of Gray’s licensing, from a third party, and he claims that “he wanted to give to the State Pilo-tage Commission some additional time in which to make a decision to go ahead and license him ..., thus avoiding litigation with the very people on whom he must rely for his ultimate appointment as a Bar Pilot.”
The decision of the State Pilotage Commission not to branch Captain Brady in accordance with the law was not finally made until Gray’s licensing. We are of the opinion, therefore, that Brady was not guilty of laches, because the decision of the Commission was based upon its interpretation of applicable laws, and it defended its action on appeal to the Court of Civil Appeals, and continues to defend its action in this Court, on the basis that it acted pursuant to law in making its decision. We are of the opinion that this case is similar to the case of Faircloth v. Folmar, 252 Ala. 223, 40 So.2d 697 (1949). In that case, the Court held that a delay of ten months in seeking a writ of mandamus in regard to a *784 local school board’s decision did not constitute laches. In Faircloth, this Court stated:
“We have here the assertion of a substantial and independent right, and not a rule of practice or interlocutory order, and it does not appear from the face of the petition that the right has become doubtful or in any manner affected or obscured by the delay of ten months, or that injury would result from it since there is no interim change alleged in the substantive rights of any one, nor death of a witness, or loss of evidence, and no disputed question has become obscured by the delay, and no injustice may in anywise result from it, so far as it appears.”
252 Ala. at 226, 40 So.2d at 699.
Because the State Pilotage Commission did not take formal action detrimental to Brady’s claim until it licensed Gray, we are of the opinion that Brady’s claim was not barred by the doctrine of laches.
II
The State Pilotage Commission next argues that the judgment entered by the Court of Civil Appeals will have the effect of compelling it to add one more pilot, and that the Alabama Legislature has entrusted to the Commission the discretionary task of deciding how many pilots the business of the port will support.
The original mandamus petition sought an order removing Captain Gray and placing Captain Brady into a position as a bar pilot; however, it is true that prior to trial the petition was modified to demand only that the State Pilotage Commission license Captain Brady as a bar pilot. Even so, whether Captain Gray would remain a bar pilot upon the licensing of Brady would then become solely a matter of discretion for the Commission. The Commission has authority to determine, within its discretion, the number of bar pilots needed. It could elect to increase the number to thirteen and keep Captain Gray, or to keep the number at twelve and remove Captain Gray. At any rate, the court would not be the instrumentality setting the number of bar pilots. The court’s judgment is based upon the right of Brady to be licensed, as authorized by law, not upon any decision as to the number of bar pilots the Commission must license. That decision would remain in the hands of the State Pilotage Commission.
Ill
The Commission contends that issuance of the license is discretionary and that if the exercise of discretion by the Commission is not arbitrary or capricious, then its decision should stand. The Commission points to a letter in the record written by the person who drafted the statutory revision, which letter advises the Commission in regard to the action it should take. See paragraph 11 of supplemental statement of facts set out above. The Commission argues that its following the advice of counsel is clear evidence that its decision was not arbitrary.
This argument misinterprets the actual discretion vested in the Commission. According to Code 1975, § 38-4-30, the Commission has discretion to control the number of pilots for Mobile Bay. The previous number had been 12. On the death of one of these pilots, the Commission properly exercised its discretion and decided the business in Mobile Bay justified licensing a replacement; however, § 33-4-31 specifically spelled out what action could be taken by the Commission and how it should be taken. In addition, § 33-4-34 created the requirement that the Commission license whichever candidate was at the top of the seniority list according to the date of the candidate’s completion of all requirements of apprenticeship. The Court of Civil Appeals has determined, as a matter of law, that Brady was that person, and we agree with that determination.
The case of Waste Disposal, Inc. v. Stewart, 432 So.2d 1255 (Ala.1983), cited by the Commission, is not dispositive of this issue. In that case, it was within the discretion of the decision-maker whether to issue the license at all. If, in the case at *785 hand, the Commission had decided not to replace the deceased pilot, that would have been an exercise of discretion like that present in Waste Disposal.
The Commission, once it had exercised its discretion to issue an additional bar pilot’s license, was bound to follow the appropriate statute, to-wit: § 33-4-34. This new statute gave the Commission no discretion when it came to the method of determining seniority of pilots. That method is specifically spelled out in the statute, and the application of the method was not subject to the discretion of the Commission.
IV
The Commission further argues that the judgment of the trial court must be affirmed because it, with the advice of the draftsman of the relevant portion of the Commission’s governing statute, has interpreted its “own” statute in the manner upheld by the lower court, and that, under Alabama law, great deference is given to an administrative agency’s interpretation of its own organic statute.
This Court has indeed held in Hulcher v. Taunton, 388 So.2d 1203, 1205 (Ala.1980), that:
“Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.”
Similarly, in Buchanan v. State, 274 Ala. 592, 597, 150 So.2d 200, 204 (1962), this Court opined:
“[I]t is a generally recognized rule that contemporaneous administrative construction placed on a statute by officials administering the law is to be given consideration in interpretation of statutes.”
The same rule was applied in State v. Helburn Co., 269 Ala. 164, 167, 111 So.2d 912, 914 (1959):
“The administrative construction given by the highest officials charged with the duty of administering tax laws, while not binding ..., is to be considered_”
While the principles of law cited to us by the Commission do have a proper role to play when administrative actions are disputed, we are of the opinion that in this particular case, the Commission did not apply the 1961 statute, now codified at Code 1975, § 33-4-34, and that under the provisions of this statute, Brady was the next apprentice pilot entitled to be licensed as a bar pilot, as the Court of Civil Appeals determined, because he finished all the requirements of his apprenticeship before Gray did.
The Commission could not, of course, take action contrary to the mandates of the law.
V
Finally, the Commission argues that the decision of the Court of Civil Appeals is erroneous because, even under the terms of the 1961 statute, it argues, Brady was not entitled to be branched before Gray. We are of the opinion that the Court of Civil Appeals correctly ascertained the intent of the 1961 statute, which is the focus of the entire dispute, and we need only refer to that Court’s discussion of the legislature’s intent in passing that statute. Consequently, we affirm that Court’s interpretation of the statute as it applies to the facts of this case.
Based on the foregoing, the judgment of the Court of Civil Appeals is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.