L. CHARLES WRIGHT, Retired Appellate Judge.
At the time of this proceeding, Dr. Thomas Tucker was a licensed physician engaged in the practice of medicine. In 1990 the Alabama State Board of Health determined that Dr. Tucker’s “private office” was subject to the rules relating to the licensure and certification of abortion or reproductive health centers. Dr. Tucker filed an appeal of the declaration in the Circuit Court of Montgomery County. The Board counterclaimed. The parties submitted cross-motions for summary judgment. The trial court found in favor of the Board. Dr. Tucker appeals.
Dr. Tucker argues that the trial court erred in finding that the Board had the authority to regulate the procedures performed in his “private office.”
We find it necessary to present an overview of the applicable statutes involved in this appeal.
Section 22-2-1, Code 1975, creates the State Board of Health. It provides that “[t]he medical association of the state of Alabama, as constituted under the laws now in force or which hereafter may be in force, is the state board of health.”
Section 22-2-2, Code 1975, provides for the authority and the jurisdiction of the Board. It includes general control over the enforcement of laws relating to public health and the adoption and promulgation of rules and regulations providing for control and enforcement.
Section 22-2-4 creates the State Committee of Public Health, which consists of twelve members of the board of censors of the medical association of the state of Alabama and four others. The State Committee of Public Health acts for the State Board of Health.
The legislature, in effect, has determined that the public health of the state of Alabama is to be regulated by physicians who are elected and appointed through various legislative schemes.
Simultaneously, the legislature has provided methods by which physicians determine their own qualifications and standards of practice. These are the provisions contained in §§ 34-24-50 through -84, and §§ 34-24-310 through -406, Code 1975.
Section 22-21-21, Code 1975, provides for the “Licensing of Hospitals, Nursing Homes and Other Health Care Institutions.” It states:
*912 “The purpose of this article is to promote the public health, safety and welfare by providing for the development, establishment and enforcement of standards for the treatment and care of individuals in institutions within the purview of this article and the establishment, construction, maintenance and operation of such institutions which will promote safe and adequate treatment and care of individuals in such institutions.”
Pursuant to § 22-21-22, Code 1975, all “hospitals” are required to obtain a license from the State Board of Health. “Hospital” is defined by § 22-21-20 to include abortion or reproductive health centers. That section defines “hospital” in the following manner:
“(1) HOSPITALS. General and specialized hospitals, including ancillary services; independent clinical laboratories; rehabilitation centers; ambulatory surgical treatment facilities for patients not requiring hospitalization; end stage renal disease treatment and transplant centers, including free-standing hemodialysis units; abortion or reproductive health centers; health maintenance organizations; and other related health care institutions when such institution is primarily engaged in offering to the public generally, facilities and services for the diagnosis and/or treatment of injury, deformity, disease, surgical or obstetrical care_ The term ‘hospitals’ relates to health care institutions and shall not include the private offices of physicians or dentists, whether in individual, group, professional corporation or professional association practice.”
(Emphasis supplied.)
The legislature gave the State Board of Health the authority to adopt necessary rules and regulations to meet these statutory objectives. § 22-21-28, Code 1975. That section provides:
“(a) In the manner provided in this section, the state board of health, with the advice and after the approval by the advisory board, shall have the power to make and enforce, and may modify, amend and rescind, reasonable rules and regulations governing the operation and conduct of hospitals as defined in section 22-21-20.
All such regulations shall set uniform minimum standards applicable alike to all hospitals of like kind and purpose in view of the type of institutional care being offered there and shall be confined to setting minimum standards of sanitation and equipment found to be necessary and prohibiting conduct and practices inimicable to the public interest and the public health.”
Beginning in 1980 the State Board of Health adopted specific rules and regulations concerning abortion and reproductive health centers. Rules of the Alabama State Department of Health, Division of Licensure and Certification, Rule 420-5-1. The rules set minimum uniform standards for the operation and regulation of abortion and reproductive health centers.
While § 22-21-20 defines an “abortion or reproductive health center” as a hospital, the statute does not contain the definition of what is in fact an “abortion or reproductive health center.” The State Board of Health remedied the void by promulgating a definition pursuant to the Alabama Administrative Procedure Act. The definition at issue is one that was refined and amended by the State Board of Health in 1990. Rule 420-5-1.01. That definition is as follows:
“(b) ‘Abortion or Reproductive Health Center’ means any health care facility operated substantially for the purpose of performing abortions. Such a facility must be a free-standing unit and not part of a hospital or other facility licensed for other purposes by the State Board of Health. A health care facility operates substantially for the purpose of performing abortions if any of the following conditions are met:
“1. The health care facility performs thirty or more abortion procedures per month during any two months of a calendar year;
“2. The health care facility holds itself out to the public as an abortion provider by advertising by some public means, such as a newspaper, telephone directory, magazine, or electronic media, that it performs abortions; or
*913 “8. The health care facility applies to the State Board of Health for licensure as an abortion or reproductive health center.”
As a consequence of this definition, the State Board of Health required facilities within the state which met any of these requirements to be licensed.
Dr. Tucker admitted that he performed approximately 1,200 abortions per year and that he advertised in the Yellow Pages. He insists, however, that his activities are not subject to regulation because the procedures are performed in his “private office” and that § 22-21-20 specifically excludes the “private offices of physicians” from regulation.
We find the trial court’s judgment to be persuasive. We, therefore, adopt it as our own.
“Although [Dr. Tucker has] alleged the unconstitutionality of the various rules contained in Chapter 420-5-1, [he has] presented no probative evidence to support [his] contentions and, except for rule 420-5-1.01(2)(b), [has] offered little argument against them. The evidence and legal authorities support the rules’ constitutionality. Therefore, the court finds the rules in Chapter 420-5-1 to be constitutional and enforceable. The court finds the State of Alabama has authority to promulgate such rules as a part of its legislative plan, as noted in § 22-21-20, 1975 Code of Alabama. The rules are within its regulatory police power and are not an improper delegation of authority to the State Board of Health of the defendant. Employees’ Retirement System of Alabama v. Oden, 369 So.2d 4 (Ala.1979); Johnston v. Alabama Public Service Commission, [287 Ala. 417,] 252 So.2d 75 (1971); State v. Mills, [278 Ala. 188,] 176 So.2d 884 (1965); James v. Todd, [267 Ala. 495,] 103 So.2d 19 (1958).
“Additionally, the court finds that Rule 420-5-1.01(2)(b) is constitutional as a proper exercise of the State’s authority to define and regulate a health care provider. This includes a physician whose practice, office, or facility comes within the definition of a health care facility in one of the categories, i.e., abortion or reproductive health centers, within the scope of the defendant’s authority to regulate. Section 22-21-20, 1975 Code of Alabama. The State has the authority to regulate a profession, and this does not violate any privacy or property right. Planned Parenthood v. Casey, 505 U.S. -[112 S.Ct. 2791], 120 L.Ed.2d 674 (1992); Whalen v. Roe, 429 U.S. 589 [97 S.Ct. 869, 51 L.Ed.2d 64] (1977); Watson v. State of Maryland, 218 U.S. 173, 30 S.Ct. 54 L.Ed. 987 (1910); Dent v. State of West Virginia, 129 U.S. 76 [114, 9 S.Ct. 231, 32 L.Ed. 623] (1889); State v. State Board of Medical Examiners, 209 Ala. 9, 95 So. 295 (1923).
“Additionally, this definition is not arbitrary or capricious, but is supported by the evidence. The parameters used to define an abortion or reproductive health center in Rule 420-5-1.01(2)(b)l. & 2. clearly exclude any privately practicing physician who may do some abortions as a part of his practice, as opposed to a physician whose practice consists of operating a health care facility primarily for the performance of abortions.
“Two of the three separate conditions of the Rule are met by [Dr. Tucker]. [He] performs far more than thirty or more abortion procedures per month during any two months of a year. The evidence indicates that [he] advertise[s] as specified by the Rule, thereby holding [himself] out as the type facility that is regulated. However, [Dr. Tucker did not apply] to the State Board of Health for a license as an abortion or reproductive health center. The objective of the rules is to regulate this type activity, and the State has a legitimate interest in regulating it. Roe v. Wade, 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147] (1973); Planned Parenthood v. Casey, supra.
“Although § 22-21-20 excludes ‘private offices of physicians’ for regulation, the State may determine appropriate definitions for regulation, including licensing. Barsky v. Board of Regents, 347 U.S. 442 [74 S.Ct. 650, 98 L.Ed. 829] (1953); Haden v. Watson, [270 Ala. 277,] 117 So.2d 694 (1960); Brady v. State Pilotage Commission, 496 So.2d 776 (Ala.Civ.App.1985). Neither the definition nor the evidence indicates an attempt to regulate a private *914 office of a physician. It regulates the operation of a health care facility as reasonably defined by the State.
“The regulation of the operation of a defined health care facility, whether it be called a practice, office, facility, or center, is the regulation of what takes place there, viz., the routine provision of abortions on a continuing basis as defined by the Rule. Abortion is a surgical procedure. The evidence shows, and [Dr. Tucker admits], abortion is essentially [his] exclusive service, done regularly and continuously, in numbers far exceeding those mínimums set by the Rule. Dr. Tucker states that he does one hundred abortions during a sixty-hour working month_ Clearly, [Dr. Tucker operates a facility that is] doing regular and continuous surgical procedures that are intended to be covered by the rules.
“The defendant has proven a need to regulate abortion and reproductive health centers, which are a type of ambulatory surgical center. Ambulatory surgical centers of various types are routinely and properly regulated by the State. In fact, [Dr. Tucker admits] the reasonableness of most of the rules, and nine abortion and reproductive health centers in the State of Alabama are licensed under the rules. It is uncontroverted that the intent and substance of the rules are to provide a higher standard of health care.
“Based upon this and the other evidence in the record, the court finds the defendant has a legitimate interest in regulating abortion and reproductive health centers, and Rule 420 — 5—1.01(2)(b) defines such a facility in a rational way. That a physician’s office, practice, or facility may come ■within the confines of an abortion or reproductive health center, as defined by the Rule, does not make the Rule unlawful or unenforceable.”
Dr. Tucker raised constitutional issues in the court below which were not presented on appeal. We have adopted herein the judgment of the court concerning the issue of whether the adoption, application, and enforcement of Rule 420-5-101 by the State Board of Health pertaining to the performance of Dr. Tucker is constitutional and proper and is not contrary to, or in violation of, § 22-21-20, Code 1975. As to other issues decided by the trial court, but not presented on appeal, we affirm the trial court without comment.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.